1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OLMEDO, | 1:10-cv-00406-AWI-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| J.D. HARTLEY, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1994 conviction of three counts of attempted murder and an accessory to murder.  Petitioner is serving a life sentence with the possibility of parole.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, Petitioner contends the Board of Parole Hearings' (Board) August 21, 2008 decision finding him unsuitable for release was in violation of his due process rights.

Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court, challenging the Board's 2008 decision.  The superior court denied the petition finding some evidence to support the Board's decision.

///

1

Petitioner subsequently filed petitions for writ of habeas corpus in the state appellate court and state supreme court.  Both petitions were summarily denied.

Petitioner filed the instant petition for writ of habeas corpus on January 20, 2010.

On May 14,2010, Respondent filed a motion to dismiss the petition as not cognizable. Petitioner opposed the motion on June 9, 2010.  On September 3, 2010, Respondent's motion to dismiss was denied.

Respondent filed an answer to the petition on October 20, 2010.  Petitioner filed a traverse on November 30, 2010.

## STATEMENT OF FACTS[1]

On May 21, 1994, victims, Edwin Guevara, Andres Andrade, and Alfredo Andrade, gang members of the Varrio Little Town were walking down Placentia Street in Costa Mesa when they stopped to talk to two girls in front of a residence.  The victims noticed a car pull into the driveway next to the residence.  The victims recognized the passenger as "Mike," Miguel Ruelas-Tejeda (Tejeda), the co-defendant, as a gang member from "Shalimar Street," but did not recognize the driver, later identified as Petitioner, a gang member of "Santa Nita."  The victims saw Tejeda exit the vehicle and pull out a large dark colored handgun.  Tejeda pointed the gun at the victim and began shooting in an unprovoked-assault.  The victims ran for cover and noticed Tejeda adjust his gunfire in their directions as they moved.

The investigation revealed that one of the girls, identified as Araceli Jiminez, had reported that both Tejeda and Petitioner had driven past her residence on two occasions and had pointed a weapon at her.  During the interviews, Tejeda admitted to pointing a gun at Jiminez earlier in the day.  Tejeda stated he received a weapon from Petitioner earlier in the week.  The weapon was located at Olmedo's residence and was identified as a Jennings .22 caliber semi-automatic handgun.  Several photographs of Petitioner holding the gun and using gang hand signs were also discovered at the residence.  During the interview with Petitioner, he admitted to loaning the fully loaded gun to Tejeda because he was having trouble with some "Little Town"

---

[1] This information is taken from the Probation Officer's Report as referenced in the Life Prisoner Evaluation Report January 2008 Calendar.

1   gang members.  Petitioner also stated that he was present when Tejeda shot at the victim.

2   Petitioner believed Tejeda was only going to challenge the victims to a fight, but then observed

3   Tejeda pull out the gun and start shooting at the victims.

4                                                    DISCUSSION

5   I.      Standard of Review

6           On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

7   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

8   enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

9   v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769

10  (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v.

11  Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's

12  enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed

13  by its provisions.

14          Petitioner is in custody of the California Department of Corrections and Rehabilitation

15  pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

16  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

17  he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

18  v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

19  Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

20  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

21  petition is not challenging [her] underlying state court conviction.'").

22          The instant petition is reviewed under the provisions of the Antiterrorism and Effective

23  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

24  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

25  adjudication of the claim "resulted in a decision that was contrary to, or involved an

26  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

27  of the United States" or "resulted in a decision that was based on an unreasonable determination

28  of the facts in

1  ///

2  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

3  538 U.S. at 70-71;Williams, 529 U.S. at 413.

4      "[A] federal court may not issue the writ simply because the court concludes in its

5  independent judgment that the relevant state court decision applied clearly established federal

6  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

7  A federal habeas court making the "unreasonable application" inquiry should ask whether the

8  state court's application of clearly established federal law was "objectively unreasonable."  Id. at

9  409.

10      Petitioner has the burden of establishing that the decision of the state court is contrary to

11  or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.

12  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

13  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

14  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

15  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

16  II.   Review of Petition

17      There is no independent right to parole under the United States Constitution; rather, the

18  right exists and is created by the substantive state law which defines the parole scheme.  Hayward

19  v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,

20  482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing

21  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v.

22  Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive

23  nature of the parole-release decision, state statutes may create liberty interests in parole release

24  that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S.

25  at 371.

26      In California, the Board of Parole Hearings' determination of whether an inmate is

27  suitable for parole is controlled by the following regulations:

28      (a) General. The panel shall first determine whether the life prisoner is suitable for

4

release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at

6

609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public.  It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'"  Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.    Last Reasoned Decision

The Orange County Superior Court issued the last reasoned decision denying Petitioner's petition stating, in pertinent part:

In announcing its decision, the BPH explained its reasons, stating the commitment offense was "first." Aside from the commitment offense, the BPH noted Petitioner had incurred a "115" (a serious rules violation) in 2005. Identical 115's were issued to about 107 other inmates at the same time regarding a general refusal of Hispanic inmates to "program" with Black inmates due to racial tension. Additionally, Petitioner's 2008 psychological evaluation was not entirely favorable in that the evaluator assessed Petitioner's risk potential for future violence as "moderate." The evaluator did not believe Petitioner had accepted responsibility for his actions. The BPH noted that Petitioner's 2005 psychological evaluation had been extremely positive. It encouraged Petitioner, saying that "moderate" risk assessment did not necessarily mean he could not achieve parole release. It also noted it was extremely satisfied with Petitioner's parole plans. As for his self-help and education, Petitioner had "turned a corner," and had "done a lot above and beyond what was asked of him." Nevertheless, Petitioner had to "get some distance" from the 115. The BPH concluded it would not grant parole. The BPH ruled it would reconsider Petitioner's parole in one year.

(Ex. 2, to Answer.)

At the 2008 hearing, the Board found Petitioner to be an unreasonable risk to public safety based on the circumstances of his commitment offense, institutional misconduct, and unfavorable psychological report.

The commitment offense was carried out in an especially callous manner and involved multiple victims that were attacked during the same incident. Petitioner loaned his fully-loaded gun to a fellow gang member who told Petitioner that he was having trouble with members of a rival gang. Petitioner drove his crime partner to the vicinity of the rival gang members where the several shots were fired by his crime partner. During the investigation, several photographs of Petitioner holding the gun and using gang hand signs were also discovered at his residence. Given the fact Petitioner merely claimed to associate with other gang members, the motive a gang retaliatory shooting was trivial.

Petitioner has suffered two serious rules violation's (115s), the most recent in 2005 for delaying/obstructing a peace officer. During the 2005 incident, Petitioner refused the direct order of officers to program with African-American inmates. The prior violation was for battery during a melee between Northern and Southern Hispanics. The fact that Petitioner's most recent violation occurred just three years prior to the 2008 hearing and involved disobedience of a direct order, provided some evidence that Petitioner continues to remain an unreasonable risk to public safety.

1   Lastly, the most recent psychological report which placed Petitioner in the "moderate"

2   range for future violence.  It was further noted:

4   > In the clinical or more current and dynamic domain, this inmate exhibited some of
    > the predictive factors for recidivism.  He displayed little insight into his
    > personality dynamics that contributed to his choices in the instant offense.  While
5   > he's programmed well more recently, his history in custody suggested that he has
    > not always been amenable to the recommendations of the BPH.  This was
6   > especially evidence[d] by his 115 on April 15, 2005, as it also pointed to
    > impulsivity when making decisions.  At times he communicates negative attitudes
7   > regarding those in authority and has been somewhat resistant following the
    > treatment recommendations.

9   Such finding was properly considered by the Board and superior court as a factor in determining

10  whether Petitioner remains a current risk to public safety.  See e.g. Hayward, 603 F.3d at 563

11  (psychologist's evaluation that prisoner posed a "low to moderate" risk of future violence,

12  coupled with evidence that offense was particularly aggravated, is sufficient evidence to

13  demonstrate future dangerousness to support denial of parole.)

14  After considering the factors in support of suitability, the Board concluded that the

15  positive factors did not outweigh the factors in support of unsuitability, and the superior court's

16  determination that the circumstances of the commitment offense, institutional misconduct, and

17  unfavorable psychological evaluation demonstrate Petitioner continues to remain an

18  unreasonable risk to public safety is not an unreasonable application of the some evidence

19  standard, nor an unreasonable determination of the facts in light of the evidence.  28 U.S.C. §

20  2254(d).

21  ## RECOMMENDATION

22  Based on the foregoing, it is HEREBY RECOMMENDED that:

23  1.    The instant petition for writ of habeas corpus be DENIED; and

24  2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

25  This Findings and Recommendation is submitted to the assigned United States District

26  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

27  Local Rules of Practice for the United States District Court, Eastern District of California.

28  Within thirty (30) days after being served with a copy, any party may file written objections with

1   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

2   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

3   and filed within fourteen (14) days after service of the objections.  The Court will then review the

4   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

5   failure to file objections within the specified time may waive the right to appeal the District

6   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7

8       IT IS SO ORDERED.

9   **Dated:    December 8, 2010**              **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28